LAVACA TELEPHONE COMPANY, Inc.,
Northern Arkansas Telephone Company,
Southwest Arkansas Telephone Company, Inc.,
and Walnut Hill Telephone Company *v.*
ARKANSAS PUBLIC SERVICE COMMISSION

CA 97–1283                                986 S.W.2d 146

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered March 10, 1999

264

*William G. Bullock*, for appellants.

*Paul Ward*, for appellee.

JOHN E. JENNINGS, Judge. Lavaca Telephone Company, Inc., Northern Arkansas Telephone Company, Southwest Arkansas Telephone Cooperative, Inc., and Walnut Hill Telephone Company appeal Orders No. 9 and 11 entered by the Arkansas Public Service Commission in Docket No. 97-040-R. Their sole point on appeal is that the Commission's adoption of Rules of Practice and Procedure, General Service Rules, and Telecommunications Provider Rules in Orders No. 9 and 11 is unlawful because the rules do not comply with the statutory mandates of Act 77 of 1997, the Telecommunications Regulatory Reform Act of 1997. We find no error and affirm.

Act 77, which became effective February 4, 1997, was enacted to change the telecommunications industry in Arkansas consistent with the Federal Telecommunications Act of 1996. Not only did it open the telecommunications market to competition on fair and equal terms, but it also called for the modification and elimination of unnecessary regulation. It created the Arkansas Universal Services Fund to promote and assure the availability of comparable services and rates between urban and rural areas. Finally, the Act recognized the difference between the small and large incumbent local exchange carriers and required that those differences and the burdens placed on small carriers because of regulation be considered when promulgating rules and regulations.

To fulfill these regulatory reforms, sections 11(d) and (e) of Act 77 ordered the Commission, not later than 180 days after the effective date of the Act, to conduct a rule-making proceeding to identify and repeal all rules and regulations relating to the provision of telecommunications service, which are inconsistent with, have been rendered unnecessary by, or have been superseded by either Act 77 or the Federal Act and to revise its rules so that they apply, except as expressly provided in Act 77, equally to all providers of basic local exchange service. Section 11(e) also provided that all future rule changes promulgated by the Commission apply equally to all providers of basic local exchange service.

Pursuant to Act 77's mandate, the Commission initiated Docket No. 97-040-R to review all Commission rules and regulations to ensure consistency with the Federal Telecommunications Act and Act 77. Order No. 1 invited any interested person or entity to participate in the proceeding. It required that the parties' initial comments identify with specificity those rules and regulations or parts thereof affected by Act 77 and the specific action which should be taken, including specific proposed modifications or amendments to rules and regulations so identified. It further provided that comments should include specific proposed revisions pursuant to section 11(e) of the Act. Twenty-seven incumbent local exchange carriers (LECs), which included appellants; Alltel Arkansas, Inc.; Alltel Communications, Inc.; AT&T Communications of the Southwest, Inc.; the Attorney General; and the General Staff of the Arkansas Public Service Commission (Staff) filed comments in the docket.

The LECs' comments stated that members of the Arkansas Telephone Association had undertaken a comprehensive review of the existing Commission rules and proposed in their place Telecommunications Providers Rules and Amended Rules of Practice and Procedure. The LECs claimed that their proposed rules left the quality-of-service sections substantially unchanged, eliminated unnecessary rules, which were obviated by Act 77 or the federal act , and eliminated any redundancies that occurred from melding the three existing sets of Commission rules into one. They argued

that, if a conflict exists between an interexchange rule and a local exchange carrier rule, the least restrictive version of the rule should be applied in order to lessen the regulatory burden.

Staff responded that many of the LECs' proposed rules would greatly increase the regulations covering the interexchange carriers and are unnecessary because of the existing competitive environment in the interexchange market and are contrary to Section 11(c), which requires that new regulatory burdens meet a strict cost-benefit analysis. Staff also argued the LECs' proposed rules reduce quality-of-service standards and may be contrary to Act 77's definition of basic local exchange service. Rather than impose additional regulations on interexchange service providers, Staff suggested the adoption of a single set of rules for all telecommunications providers, arranged in sections based on the particular service provided. Staff argued that regulating all telecommunications providers uniformly by the types of service they provide enables the existing competitive telecommunications markets to continue without imposing additional regulation and places all entrants in the market under an equivalent regulatory framework. Staff noted that sections 6(c) and 12(h) allow the Commission to enforce quality-of-service rules, which are equally imposed on all telecommunications providers, and argued that, because quality-of-service standards vary depending on the types of service provided, a single set of rules, recognizing that one provider may supply several types of service, is consistent with the quality-of-service regulation that Act 77 contemplates.

In Order No. 8, the Administrative Law Judge (ALJ) adopted Staff's proposed Rules of Practice and Procedure and Telecommunication Providers Rules. In making her ruling, the ALJ held that Staff's proposed rules are consistent with section 11(e) of Act 77 in proposing rules which apply, except as expressly provided in Act 77, equally to all providers of basic local exchange service; that Staff's proposed rules recognize the differing regulatory requirements for non-electing incumbent LECs, electing incumbent LECs, and competing LECs; and that Staff's proposed rules recognize that different services and service providers are subject to dif-

ferent levels of competition and therefore should be subject to different forms of regulations, which is consistent with Act 77. In contrast, the ALJ found that the LECs proposed an extensive revision the of the Commission's existing rules, including a new set of rules and duplication of sections of Act 77 as rules and that their proposed rules would reduce the quality of service prescribed in the existing rules and give telecommunications providers greater discretion to impose charges on customers unrelated to the charges for telephone service. She found that, for the majority of the LECs' proposed rule changes, the LECs could not demonstrate that the existing rules were inconsistent with, have been rendered unnecessary by, or have been superseded by either Act 77 or the Federal Act.

In Order No. 9, the Commission adopted Order No. 8 of the ALJ, and in Order No. 11, the Commission denied the LECs' petition for rehearing of Order No. 9. Thereafter, four of the LECs jointly filed a notice of appeal from Orders No. 9 and 11, arguing that the rules adopted by the Commission violate Act 77.

The Public Service Commission is a creature of the legislature and performs, by delegation, legislative functions. *Arkansas Elec. Energy Consumers v. Arkansas Pub. Serv. Comm'n*, 35 Ark. App. 47, 813 S.W.2d 263 (1991). As such, the commission possesses the same powers as the General Assembly while acting within its legislatively-delegated powers and has very broad discretion in exercising those powers. *Id.* This court's review of appeals from the commission is limited by the provisions of Ark. Code Ann. section 23-2-423(c)(3), (4), and (c)(5) (Supp. 1997), which define the standard of judicial review as determining whether the commission's findings of fact are supported by substantial evidence, whether the commission has regularly pursued its authority, and whether the order under review violated any right of the appellant under the laws or the Constitutions of the State of Arkansas or the United States. *See Bryant v. Arkansas Pub. Serv. Comm'n*, 54 Ark. App. 157, 924 S.W.2d 472 (1996). In *Arkansas Electric Cooperative Corporation v. Arkansas Public Service Commission*,

42 Ark. App. 198, 856 S.W.2d 880 (1993), this court again observed:

> [J]udicial review is not a mere formality, and it is our task to determine whether there has been an arbitrary or unwarranted abuse of the Commission's discretion, although considerable judicial restraint should be observed in finding such an abuse. It is not for this court to advise the Commission how to discharge its functions in arriving at findings of fact or in exercising its discretion. The question of reasonableness of the actions of the Commission relates only to its findings of fact and to a determination of whether its actions were arbitrary.

*Arkansas Elec. Coop., supra,* at 216-17, 856 S.W.2d at 890 (quoting *Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n,* 18 Ark. App. 260, 265, 715 S.W.2d 451 (1986)). Commission action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis, and something more than mere error is necessary to meet the test; the appellant must prove that the action was a willful and unreasoning action, made without consideration and with a disregard of the facts and circumstances of the case. *See Bryant v. Arkansas Pub. Serv. Comm'n,* 54 Ark. App. at 168. For a commission order to be invalid, it must lack a rational basis. *City of Little Rock v. AT&T Communications of the S.W., Inc.,* 318 Ark. 616, 888 S.W.2d 290 (1994).

Appellants have not raised any argument concerning how the rules were adopted, only with the content of the rules themselves. They contend that the Commission's adoption of Staff's rules violates sections 11(c), 11(d), 6(c), 12(h), and the general purposes section, section 2 of Act 77, and urge this court to look at the statutory directions given by the General Assembly in Act 77 and compare those directions with the rules actually adopted by the Commission. Appellants conclude that, if the rules "don't measure up," then the Commission did not regularly pursue its authority and Order No. 9 should be reversed.

██ Although appellants argue that this court should set aside those portions of Order No. 9 that are violative of Act 77, they have not specified which individual rules they contend are

inconsistent, rendered unnecessary by, or superseded by Act 77. Instead, they ask us to evaluate 265 pages of rules adopted by the Commission and compare them to the statutory mandates of Act 77. This we are unable to do. An argument is not sufficient if it simply invites the court to search the record generally for errors. *Accord Kincade v. Mikles*, 144 F.2d 784 (8th Cir. 1944).

■ Appellants also place great emphasis on the fact that the rules that apply to and regulate local exchange carriers are much more extensive than those that apply to interexchange carriers. They contend that this disparity clearly shows that the Commission violated the mandate of sections 6(c) and 12(h), which require that all quality-of-service rules be equally imposed on all telecommunications providers. We disagree. The adopted rules do not make a distinction between local exchange carriers and interexchange carriers as appellants argue, but distinguish local exchange service from interexchange service. In Order No. 8, the ALJ held that this distinction was justified by the different types of service being offered, regardless of who provided the service. She found that Staff's proposed regulation of all telecommunications providers uniformly by service is consistent with section 11(e) of Act 77 in proposing rules that apply equally to all providers of basic local exchange service. She also found that different services and service providers, such as interexchange carriers, are subject to different levels of competition and, therefore, should be subject to different forms of regulations. Appellants have not pointed to any provision in Act 77 that requires the regulations for local exchange services to be the same as those for interexchange services.

■ Appellants also argue that the Commission is prohibited from promulgating any new rule or regulation that increases the regulatory burden on telecommunications service providers, except upon a showing that the benefits of such rule or regulation are clear and demonstrable and substantially exceed the cost of compliance by the affected telecommunications service provider. While we agree that Act 77 contains this provision, we note that Act 77 requires this costs–benefits analysis only for new rules and regulations. In their brief, appellants state that the rules adopted

by the Commission vary only slightly from the rules existing prior to Act 77.

■ Appellants also contend that the Commission erred in rejecting their proposed rules. This argument, however, was not made in their petition for rehearing and, therefore, cannot be addressed on appeal. Under Arkansas Code Annotated section 23-2-423(c)(2) (Supp. 1997), an objection to an order of the Public Service Commission may not be considered by this court unless the objection has been urged before the Commission in the application for rehearing. *See Southwestern Bell Tel. Co. v. Arkansas Pub. Serv. Comm'n*, 58 Ark. App. 145, 946 S.W.2d 730 (1997).

Appellants further contend that the Commission should be ordered to specify which of its adopted rules are considered quality-of-service rules or standards and which are not. Because under Act 77 only quality-of-service rules and standards are enforceable against electing LECs, appellants argue that these rules must be identified so they will know the rules they must obey and the rules from which they are exempt.

■ Appellants have not cited anything in Act 77 that requires the Commission to identify or define the quality-of-service rules and standards. Section 11(d) and (e) of Act 77 required the Commission to conduct a rule-making proceeding to identify and repeal all rules and regulations inconsistent with, rendered unnecessary by, or superseded by Act 77 and to revise its rules so that they apply, except as expressly provided in Act 77, equally to all providers of basic local exchange service. Appellants did not ask the Commission to identify these rules until after the comments were filed, the hearing was concluded, and the Commission had adopted the ALJ's order. Based on our standard of review, we cannot say that the Commission acted arbitrarily and capriciously in failing to do so.

Affirmed.

ROBBINS, C.J., and PITTMAN, HART, BIRD, and ROGERS, JJ., agree.